on behalf of the Appalachians, this is Paul J. Glaser, on behalf of the people, Mr. J. Paul Hoffman. Good morning, guys. Good morning, Mr. Glaser. Eric Brown appeals his conviction for the offense of first-degree murder, which followed a bench trial in Kane County. More to the point, he appeals the denial of a motion to suppress evidence seized pursuant to an invalid complaint for a search warrant, one which lacked probable cause. We know hearsay can provide the basis of probable cause, but it must be reliable, as measured by the informant's veracity and basis of knowledge. What makes this case unusual is that the person who provided the information was an attorney representing two other people who were present at the scene and possible suspects in the offense. Were they or were they not possible suspects? Were they just witnesses? They were there at the place where the shooting occurred. And if you read the complaint, there's no reason to believe that they are not suspects as well as anyone else in the universe, because no one mentioned it. Wasn't their ultimate statement, position, whatever, the same as every other witness? Well, ultimately, at trial, there were similarities, but we're looking at the full-course of the case. At the investigative stage? At the investigative stage? Well, we know from the judge who looked at the complaint just knew it was on the complaint. And on the complaint, it doesn't say who the suspect is, except from the statements of the attorney for two people who were at the scene. Two? Correct. Not just the one? Yes. Yes. And those, and their statements were consistent, correct? On the complaint? Or, again, I'm not looking at the trial, because the trial was not... I know that. But the two witnesses made, or the two persons who were represented by the attorney made statements that were not inconsistent with one another, and then the attorney recited those, correct? The statements related to the police from the attorney from the two people were consistent. I'll go with that. Okay. Let me ask you this as a threshold question, Mr. Glaser. I mean, obviously, the information came through Attorney Mahoney. However, as I understand it, the three individuals providing that information were, however, identified in the affidavit. Is that correct? Two individuals. Yes. Two were identified. Yes. Is that arguably enhanced their credibility? No. No. Because what the two witnesses, to the two witnesses, filtered their statements through their attorney, who filtered their statements to the police. The attorney, neither counsel nor myself apparently have found any cases that have dealt with this exact question of what happens when the attorney is the one who reports information to the police. Again, police didn't call Mr. Mahoney and ask him, what do you know? Mahoney called the police. The problem is, we're not saying that Mr. Mahoney's not being truthful in his dishonor. We're saying we have a lot of respect for Mr. Mahoney's experience and ability as a zealous advocate for his clients. And his job there is to cast his clients, to paint his clients in the most favorable light for their prospects down the road. I mean, defense attorneys know about this race to the courthouse, where the first attorney, the first one who can get there, if there's multiple co-defense, the first one who can get their client to plead guilty and work a deal with the state to come up with a great deal. That guy wins. There was never a question about getting a plea bargain here. Well, Mr. Mahoney, I think, has invented what's called a race to the station house, where he wants to be the first person to the police in the possibility to help these two witnesses down the road. Now, one of the witnesses, a specialist, Mr. Parker, was already on the lam for a class X offense that he had pled guilty to. He was supposed to turn in six other drug dealers and never did. He went on the lam. He wound up working a pretty good deal, and probably thanks to Mr. Mahoney for cooperating with the state in this case. Well, but by the same token, Mr. Mahoney brings this information forward knowing that he could be placing his client under suspicion because his client is the friend of the woman who is the, I guess, wife of the defendant. So he's bringing forward a difficult situation, and there's also a child somewhere involved, not a child of these parties, but Mrs. Nichols is allegedly dropping off her child to visit with the defendant. I mean, there are reasons. He's creating, he might be trying to make a deal, but he's creating a rather global situation where he's not only giving his client maybe a deal, but he's also saying, hey, look, he could have a motive. He's going out with this woman, but I'm bringing this information to you because it's important in the murder investigation. Yes. Let me just back up a second. Yes, we have the defendant's estranged wife and her new boyfriend. This was a risky gambit on Mr. Mahoney's part, but we have Parker going into, well, first of all, we have Nichols going to Mahoney, then we have Parker going into Mahoney, and Parker hearing that he's possibly wanted by the police, wants to cover himself because he's worried about this class X charge that's still hanging over his head. So he goes to Mahoney trying to get some help with that. So I don't think it was that risky. If Mahoney could be the first person to talk to the police and cast his client as a good guy in this situation, then it can only help his client down the road. Again, basically. But the bottom line, none of this was actually withheld from the judge signing the complaint for the search warrant, was it? No. No, what the judge saw, what Judge Golden read was the complaint, and it simply said what it said. And that's our other point, is that we have a bare-bones affidavit here that doesn't really say anything. Mr. Pleasure, did the officer who sought the search warrant seek to corroborate any of the information provided by Mahoney's clients? No, Your Honor. There's no corroboration for any of the evidence, any of the claims on this affidavit. And when there's a question about, you know, in veracity, we look at whether there's corroboration for what the affidavit says. And there's no corroboration here for anything. There's no indication apart from that one paragraph that's at the least bit incriminatory toward my client here. The first one, five days after the shooting, Mr. Mahoney tells the police, I know Barbara Nichols, I represent Barbara Nichols, who's the exchange wife, and she has more information. Well, that doesn't tell us anything. Two days later, seven days after the shooting, Mahoney tells the police, well, that Nichols and Parker were present, not that they actually saw the shooting, but they were present. And some hours before Mr. Brown retrieved the gun from the car, and there's also hand written in, which leads me to believe it was written at the time that the detective sought Judge Golden. There was also, Mahoney says there was evidence, there was ammunition in this car for a long time. Well, again, it's Mahoney is zealously representing his client. It's not that Mahoney was a personal witness. He wasn't there at the gathering in the house. He doesn't have any personal knowledge. What he knows is what Parker and Nichols told him. You know, us attorneys don't always get the straight story from our clients, and again, not that Mahoney is unbelievable or unethical, he's perfectly ethical, but his job was to represent his clients, not to help the police investigate him. Okay, so your argument against him in two of the appeals, but let me ask you this. Did you research, are there cases from other jurisdictions that you can call attention to that have dealt with this issue of the attorney? No. I've researched, but I wasn't able to find any cases where an attorney was the affiant. At the time, he acted as a representative for other people. The closest we have is this Wilson case from the first district where the victim's daughter gave the victim some names of, the person was a rabbi, three or four people, and the victim's daughter gave him names of who the three or four people might be, and the victim then told the police what his daughter told him. That wasn't good enough for the first district. The victim in that case was a conduit for the person who's really giving the information. Mr. Mahoney is an advocate slash conduit for Parker and Nichols. So you're saying that that obviously, or at least you're arguing that bears on the veracity and the believability, the truthfulness of the complaint, the search warrant and the affidavit because he's sort of potentially conflicted in the information he's giving to the police or what? I'm saying... I realize you're trying to be tactful regarding Mr. Mahoney, but what are you saying? I'm not trying to be clever. I mean, lawyers, we're representing people. I mean, if we're, I mean, he has an ethical obligation to always tell the truth. So do I. But I'm going to tell you something important now, you might not believe me. This man will come up here and say something else, you might not believe him. We're advocates. We're presenting people. And just because someone tells us, oh, this is the information, I might want to filter it to... Mahoney's not going to go in there and confess away his clients. He's not going to paint his own clients as the perpetrators of the shooting. But then he has the option of just saying nothing. I mean, if his clients had come in and said, we did it, he's probably not going to call the police. Well, but then again, Mahoney being an experienced criminal defense practitioner knows if I can get to the cops first, I'm the leader of the gang. Well, who's getting to them before Mahoney? I'm confused. If I can get to the cops first, rather than they get to me first? Is that what you're saying? Yeah, Mahoney wants to get to the cops before the cops get to Parker and go after Parker. I mean, I hear implicit in your argument that you're saying zealous representation equals not reliable. That's what I'm saying. It's a real problem here. And that's why maybe it's a face of first impression here. So if the milkman had talked to these two and called the police and said, hey, you know, I just talked to these two guys and they witnessed blah, blah, blah, then that's not inherently unreliable. No, there's an informant. The cases tell us that's okay. Let me ask you a point of question. So a lawyer is less reliable than an informant? I think for purposes... Step back and take another look at that one. Be careful, Mr. Glazer. This is being recorded. And for purposes of determining veracity of a search warrant complaint, when you have an advocate giving the information, that's a problem with veracity. And there has to be... It's a problem. Is it automatically untruthful? Cases tell us if there's a question, that's one of the problems we look at. We look at corroboration. And there's no corroboration. But what rule would you like us to announce in this case where you have the attorney as the defiant who has clients who are on the periphery of the incident? So what rule would we announce here? I don't think we'd announce a rule. You follow the rule. There has to be some corroboration for the information, for the evidence. What about the specificity in the complaint? Because there was something about the car, the color, the make, the model. You know, I think it's pretty specific. I think we have to admit that they described it in 1986 when it was Toyota. Does that bear on the issue? That specificity? Well, you know, anyone who could see the car in the garage would know what kind of car it is. I don't think that makes a difference. That doesn't corroborate my client's connection to the gun or ammunition in the car. Wasn't there, as I recall, wasn't one of the potential other parties, co-defendants you were alluding to, the co-owner of the car, too? Wasn't that a part of the mixer?  Barb Nichols was a co-owner of the car. Which, you know, to be honest, you look at, again, I'm saying a lawyer saying to be honest, and you're talking veracity here, but the Nichols, why did Nichols just consent to a search? She didn't. I mean, she went to Mahoney because she was obviously concerned about her own well-being and her own possible accountability for the shooting here. Is the car in a garage? Yes. Well, does she have any right to go into the garage? I would think from looking at the record, she has some right to the garage. How? She's the owner of the property, I believe, or her name was in the— She's a co-owner of the car. Co-owner of the car and probably the house as well, I'm not sure. But he only rents a room there. He rents a room, yeah. Well, what about this? You said something that triggered another thought. Your argument is, well, the first problem is that these people could be potentially charged, so they want to win the race to the courthouse. Could it also be that by providing the information to the police, she would gain a more favorable impression in the eyes of the police that she's trying to be helpful? That's not what I'm saying, what I'm trying to say, yeah. And that's our problem here. Now, the state says that good faith exception applies because, you know, an officer could have acted in good faith on the warrant. The problem is we don't know that for a fact because the state never presented any evidence at the hearing, and they forfeited that argument. Good faith can be forfeited. But even if good faith applies, there still has to be some showing. Good faith doesn't apply when there's a bare-bones affidavit, and here we simply have a bare-bones affidavit. But isn't that for the trial judge to decide whether that's enough? Which I think this court will need to know about. Now, the state has argued it's abuse of discretion, it manifests for the evidence. When there's no evidence presented at the hearing, everyone just says, here's the affidavit, give me a warrant, and we're challenging the affidavit, and there's no testimony either way, then I think it's a de novo review by this court. But even if it's not, there still has to be some barrage, there still has to be some corroboration. What corroboration would you expect, given the circumstances here? And I noticed how your voice trailed off when you said Ms. Nichols probably has access to the garage. I don't find that in this record anyway. So what corroboration would you expect here? They can't go back to the property, they don't have access to the garage. What else would you expect to be corroborated? I'll check and see the affidavit. Well, the complaint, again, doesn't ‑‑ Parker never said what kind of gun my client took from the garage. It would have been nice to have some corroboration for what kind of bullet was the murder. Well, he's a drug dealer, he's not an ammunition specialist. I know, but it was a Colt .45 gun case, he would have seen had he really been there. Oh, you didn't answer the question, the bell won't save you. No, I understand that, but I don't know. There has to be something, there's nothing here. That's my point. Given these facts, what corroboration would you be looking for? I mean, okay, maybe someone had seen the type of gun and that matched the bullets that were taken from the deceased. Perhaps some other corroboration from another witness who also said my client was present at the scene at the time. All we have, again, is a strange wife and a new boyfriend saying, oh, you know, Eric Brown was there. Well, who else says Eric Brown was there? There's no information anywhere else in the complaint. Well, he lives there. I mean, he lives, they came to him, he didn't come to them, according, and they do know that he's rented a room there. But it doesn't mean that he necessarily was there at the time of the shooting. Just because he rented a room, he might have been outside somewhere else. As a result of the search of the seat stock and the items that were seized, the police recovered the gun case, the ammunitions, and papers connecting the defendant to the car. This was all evidence that Judge Sheldon relied on in his very detailed, it's a 20-some page verdict decision in this case. He relied on this information. It's not harmless error. He found Mr. Parker believable because of what was found in the car. So it's not a harmless error case. Good faith doesn't apply. We think the affidavit is bad. We ask your honors to reverse the decision. Thank you. Thank you. That's going to be dangerous out there. That's our magic wand. Yeah, I'm wondering. But it almost knocked over Mr. Glazer's car. Good morning, your honor. Counsel. May it please the court. I am Jay Hoffman, the Illinois state's attorney as a public prosecutor. It's my pleasure to represent the people of the state of Illinois in this case. First of all, something I was going to mention briefly towards the end of the counsel's argument. I think if you look at the cases I cited, Bryant, which is a 2009, I think, first district case. There's a 2007 fourth district case. And in this court's case from 1991 Fowler, it's quite clear that there is not de novo review here. There is clearly deferential review. And your job is not to look at what the trial judge ruling on the motion did. Rather, you go behind that and, as that judge did, look deferentially at the original issue in the magistrate. Bryant does a really good job of setting that out and setting how it comes through the United States Supreme Court for a long line of precedent. And uses Cabalas to verify it with regard to the lockstep doctrine. So I don't think there's any doubt that this court should defer to the rulings of the original issue in the magistrate. Now, we have also argued that it is harmless and that the good faith argument applies. Again, counsel touched briefly on the good faith matter claiming we have forfeited. This court well knows that an appellee can raise anything supported by the record. Therefore, any argument that we have forfeited is just contrary to law. It's not a forfeited argument. And I think if you look at it, the good faith argument is solid. I have addressed two of the four reasons that Leon exempts. And really, if you look at it, it's not so much exemptions. It's just that they are reasons that an officer could not have reasonably, rationally relied upon in good faith. The warrant. They go to different matters. One is if the trial judge, if the affidavit itself contained lies or matters that they should have known were untrue. The other is whether the issue in magistrate did not operate as a judicial funnel. The other has to do with whether or not the affidavit itself was bare bones, which is one that is claimed by defense here. And the other one has to do with whether or not the officer using the warrant, executing the warrant, looking at the face of the warrant, believes that, well, this isn't, you know, this couldn't be a good warrant. And as I've said forth, those are just not the case here. You've also argued that the harmless error analysis would apply. So what evidence would you be, if the gun case and ammunition were excluded, how would harmless error apply? The gun case and ammunition added somewhat, but basically we have many cases in which they never find a gun or a gun case or the ammunition. Here you had six people testify to the occurrence, to the shooting at the time. Four of them actually saw it. The other two said, yeah, we saw the victim going out the door, we saw the defendant standing there, and then we heard the shots. Four actually testified. They saw a defendant take the gun and shoot the victim. I don't know what could be more harmless. You've got absolute eyewitnesses. You've got people from the whole evening talking about the argument over the bad drugs and the lost money in the drug deal. You've got his ex-wife, you've got his current girlfriend, who says he came in, said something like, I'm going to kill that motherfucker, and got something black out of the closet, and then walked out. She then heard the shots, and then he came back into the bedroom. You've got other people talking about the disagreement between them. And as I said, you've got four people absolutely identifying the shooter and the victim, saying they saw it. This evidence is clearly harmless. Did you find in the course of your research any cases from any other jurisdictions that dealt with the issue of an attorney being the informant on a search warrant? Apparently not, because if I had, I would have cited it. Talk about the probable cause. Is this reliable or not? Well, I think it's clearly reliable, and I want to get to that. Counsel says, first of all, defense counsel below admitted that the attorney had a right to deal honestly with the court. The problem is here we have double hearsay. However, to say that because counsel is trying to put the best spin for his clients means that he's going to absolutely lie, I think is incorrect. I mean, there's a difference between spinning some evidence and lying. And here what counsel said was, this is what I was told by these people. It's a bare assertion. These two people told me this. So it's not a matter of spinning things. It's a matter of either him lying or telling the truth. And I don't think you can argue that he's lying. And with regard to- Mr. Mahoney would be happy that the state appellate prosecutors are now arguing that particular position. Well, I would argue it for Mr. Glaser, too. I would argue it for any attorney dealing with the court. I mean, we have an ethical obligation to honestly deal with the court. And objective matters like what you were told are different than subjective matters of how important a particular aggravating or mitigating circumstance is. I mean, that's arguing the law applied to the facts. Here it's just a fact. These people told me this. Now, there are some other things that maybe the magistrate or Judge Golden, in this case, would have been interested in. Do we know if-we know what the affidavit says for this search warrant, for the complaint. Do we know at the time that the police officer had any knowledge that the reason Barbara Nichols was there to bring the child of the defendant? Do we-is that information or did that come at trial? I don't believe it's in the record. Well, we have to go on. In the record, you mean whether-well, we know that she and Mr. Parker came with the child at some point earlier in the day. We know that because that apparently came at a trial. Yes. Do we know that Mr. Mahoney conveyed that information to the police officer? No. Aside from what's in the affidavit, we don't know. We only know what the police officer decided to put in the affidavit. We don't know the totality of Mahoney's statement, correct? That's correct. Does the affidavit state that the officer corroborated the information provided by Mahoney's clients? No, the only corroboration is that there are some things corroborated. And remember, the affidavit says, and this goes to what counsel was talking about, them being suspects, which I'm going to argue in a second is a non-sequitur. It doesn't matter anyway because that's not the focus of the analysis. But the, I believe it's the second paragraph, says that one of the people talking, Reynolds, is the wife, estranged wife of the person who is the suspect, the suspect in a shooting at this address. And then the woman, Ms. Reynolds, says, this is where my estranged husband lives. So there is corroboration to the extent that we know the shooting was at this residence, we know that there is a garage at this residence, and we know that Ms. Reynolds says my ex-husband lives at this residence. Aside from that, there's no indication that he went out and, again, looked at the car or whatever. But, you know, the information on the car is quite, as Judge, Justice Hudson indicated, quite specific. You're talking about the color of the car, the model year, the model, the VIN number, the license plate might even have been a different VIN number. So it's quite clear they know what the car is and that it's in this garage at the residence where the shooting occurred. There's a statement in the affidavit in that second, in the second paragraph that says, right after the sentence you quoted, her husband, Eric L. Brown, is a suspect in Joseph L. Vonner's murder. That isn't Mr. Mahoney's statement. That's the police officer's statement, correct? I believe so. And I think, does it say the suspect? It says the. Yes, it does. But I know what you're implying by the emphasis. So, I mean, is that where you were going with the issue of suspect? Well, yes, because the officer knows that this person is a suspect. And the fact that his estranged wife says my husband lives at this place where the shooting took place is corroborated by the fact the officer knows that he's the suspect. With regard to what I said before about the non sequitur, counsel says, well, they could have been suspects. Who cares? That's not the point. The point is, would all of these circumstances and evidence need a person of reasonable caution to believe that a crime occurred and that evidence of the crime would be found in this area where the warrant says you search? I would submit it doesn't matter if they're suspects. It may be even truer if they're suspects. Maybe they planted it there. That's not the point. The point is what a reasonable magistrate take this to believe that evidence of that crime, which we know there's no doubt about the crime. Bullets and cartridges, empty shells picked up outside that house. The dead man who was shot and later died was found outside that house. Presumably they had witness witnesses information at that time because they went to police were there very shortly after the shooting. So the question is just did these did this information given by these two people lead a reasonable person to believe in light of the other facts, the shooting there and that she's an estranged wife and knows the person lives there to believe that this evidence would be found where they said it would be found. Well, that's the overarching question. But are you saying that the status of the person providing information is never a part of the equation? There's never a whole line of cases. It's a citizen. Private citizens are considered to be reliable, where someone from the criminal milieu, so to speak, is not. Are you saying that it's irrelevant to the status of the informant? A private citizen is thought to be reliable, which supports this here because we have a private known citizen. I think you asked that question earlier, Your Honor. And it's true. These matters. The attorney was known. If this information wasn't true, he could be traced down and said, hey, how did you give us this false information? Both Parker and Reynolds were known. They could be traced down. And indeed, I've argued my brief. And I think it's true that the path that Parker had previously not complying with a deal he made with the people makes it even more likely that he's going to make sure he doesn't do that again. He's not going to provide them false information. Now, with regard to, yeah, whether a person could be involved, but that's not the ultimate fact. And as I said, the fact that they were suspects might make it even more true that they would direct the police to this information to clear themselves. And there's no evidence, as I set forth in the brief also, there's no evidence that they were suspects at that time. But even if there were, it certainly doesn't impact in a very negative way, if at all, I would argue, it's positive information for their reliability. Because they want to establish they're not suspects. And this is where the information is. In that Wilson case out of the first district, I think it's Wilson. Yes. There is, I mean, there's something, how do you distinguish, I mean, the daughter said she had this information. But didn't they know at the time that she had seen evidence of the robbery in her father's ring or some measure of jewelry and she could identify that? Isn't that fairly specific? I don't recall that, Your Honor. I recall that the reason that it was not regarded as reliable was because there was no indication of how she came about this information. The father said, the father went to the police a few days after the robbery and said, my daughter says she knows these people and these are the people. But there was no indication given. Here we have the lawyer, Mr. Mahoney, going and saying, this person, Reynolds, is the estranged wife of the suspect who lives at this address. Both of them, Reynolds and Parker, were at the address before, during, and after the shooting. We know what the source of the information is. That's the distinction. It's completely different. I think I've covered everything, Your Honor. If there are no further questions, we would ask this court to affirm the judgment of the law. Thank you, Mr. Hoffman. Mr. Glazer. First, Justice Jorgensen, I have to clarify some facts. I got wrong the first time around. A lot of witnesses in this case, a lot of different names, so I got confused. The defendant rented the room at the house from a Tanisha Jennings, not from his wife. Tanisha Jennings, she rented the home, lived there with Joseph Vonner and the defendant. That's at page 912 of the record and 917 of the record. So Barbara Nichols did not have any authority to rent the six months. So I was wrong on that and I apologize for that. That's okay. Now, what could Mr. Mahoney have done here that would have made things better? How about bringing the witnesses to the police for the police to talk to them in person? But calling them up is the problem here. And that's where we suddenly have to have some corroboration, and there's no corroboration here. The Wilson case at page 369. If a private citizen, as caught occurring, Mr. Hoffman, if a private citizen who's not an attorney had called and given his name and given the name of the persons from whom he got the information, that's enough. Why is it not enough simply by virtue of the status of the caller? Because it's the filtering process here. The Wilson case at 369 says that citizen informants are usually deemed reliable because they have their witnesses. They have nothing to gain. Both Nichols and Parker here had something to gain, and that's why they went to talk to their lawyer. If Ms. Nichols is wholly innocent with nothing to gain, why didn't she call the police? Why didn't she go to the police? No, she went to a lawyer because she's worried about something. And so is Mr. Parker. We know what Mr. Parker's worried about. Nichols never testified at trial, so we know what she was hiding. But we know Parker was hiding a lot, and that's why he went to talk to Mahoney. And because it's the double filtering process, it's not just hearsay. It's being filtered through an advocate for their interests. I mean, you're just inherently assuming that the lawyer is filtering this information, that he's taking something that was less than true, filtering so that it is now true. Is that your... That's my position, yes. And you're making that up out of whole cloth? No, out of knowledge of the attorney's obligation to his clients. As opposed to this specific attorney. Forget Mr. Mahoney. It could be Mr. Jones. Right, correct. Is there anything in this record that would lead the issuing judge to believe that this information has been filtered, has been spun, has been buffed up? It's because of an attorney's obligation under the Code of Professional Responsibility to be a zealous advocate for their court. Aren't they also just equally obliged to be truthful and straightforward with the court? As an officer of the court? Well, truthful, general. I looked at the rule this morning. In general, but... Qualifying it. But again, the attorney should... If the attorney was worried about his client saying something to him or her or him in trouble, the attorney would want to be completely open to the police. The attorney could have brought that witness down to the police station and had the police talk to the witness in person, and that would have been corroboration. That would have been veracity right there. But it wasn't because it was two times removed. And that's the problem with the hearsay. Did Mr. Mahoney or this attorney represent Mr. Parker in the last sex issues? According to the affidavit, he refers to Parker as his client, Wilbert Parker. And how about Nichols? I mean, is she a witness or a client in something before that? She says that Barbara Nichols had contacted his office. Now, whether, in fact, there was an attorney-client relationship there, I'm reading an attorney-client relationship in there when a person calls an attorney in the office, and I suppose attorney professional ethics experts could dispute or may agree with me on this, but once a person calls a lawyer up, there's a certain relationship right there. Well, there are lots of lawyers on the radio that get calls from people. True, but once a lawyer goes to the client, goes to the attorney's office and talks about a case, I think there is some relationship there. Well, it's not about his case. I'm sorry, it's not about her case. It's about somebody else's case. Well, why would she go to a lawyer if it wasn't her case? And that, to me, is why there should have been some corroboration. But he's not going to represent the estranged husband at this point. No, at this point, no. No further questions, Your Honor? I again ask this Court to reverse the judgment below. Thank you. Thank you very much for argument. We will take the matter under advisement and issue a decision in due course. One last recess to prepare for our last case. Thank you.